I appreciate that sentiment, and please remember it's always my pleasure to assist the Court as well as hopefully the client. Mr. Collins has what appears to be a difficult case. Our main problem, of course, is the United States against slopes, because that determined Well, actually, I think the biggest problem in this 2255 for you is Fretwell. Yeah, well, that's a problem, too. I don't, from your brief, I didn't capture how you think, why it doesn't apply on the IAC prejudice issue. Well, here's a way of looking at Lockhart against Fretwell in a different way. That case held that the prejudice could not be found in the attorney's failure to make an objection, which, based on a case that was later overruled. I think a more straightforward and more precise problem I've got here, or Mr. Collins has here, is that the prejudice was, while it has its roots in the error alleged to be made here, he still has the matter of the district court saying that he would have sentenced him to the same sentence anyway. Now, how does that, how does that bear into. I thought your brief said, well, Fretwell defendant went to trial. But I look at Justice O'Connor's concurring opinion in Fretwell, where she says, the reliance on a case that's later overruled is no different than the reliance on, in her view, on perjury in Nix versus Whitesale. And it seems to me that's a pretty all-encompassing and no prejudice rule. Well. Doesn't matter whether it's a tried case or not. Well, that's true. I mean, the Fretwell court, you know, had the language regarding giving a windfall to the defendant if he were to get the relief request. I think I pointed out in my briefing that the windfall here would be, as the court referred to in Fretwell, that the defendant would have been able to take advantage of an error against the state. And what would the error be? Well, all right, in Mr. Collins' case, it would be that, well, the district court acknowledged the holding of the bail and sentenced him to a different sentencing arrangement. He still would have gone to prison. All right? The defendant in Fretwell would have continued to live, most likely, had that happened. So there's a difference in how prejudice is viewed in Fretwell and in this case. I think both cases require his counsel's error. Here, though, well, your honors. If we were to re-sentence, I'm going to ask you this. If we were to re-sentence in accordance with Bell, not Swopes, or vacate and tell the district court to say, take, you know, consider what it would have been like in the Bell world but not the Swopes world, wouldn't we be doing exactly even what the majority said you couldn't do in Fretwell, which is essentially give your client a windfall, something to which, the way they phrased it was something to which the law did not entitle him? Well, if you took away, you know, Swopes and all that, there wouldn't be any error. I mean, Bell would still be controlling and, you know, Mr. Collins would get the benefit of that, which would be a lower sentencing reaction. That's true, but now we're in a different world. We're in the post-Swopes world, and so now we would be giving him something to which the law does not entitle him. Right. In the current state of the law. Right, and I think that's what implicates the whole ex post facto analysis. You know, this court said in the United States Dunlap that Swopes wasn't indefensible and wasn't expected. Well, I would have to, and as I did in our reply briefing that, you know, point out that a lot of cases have been holding going back to the time, the year Mr. Collins committed his offenses, which was in 2015, that, you know, the residual clause just didn't matter, which they had been holding, you know, which now, now robbery, of course, is in the force clause, and it was at the time Mr. Collins was sentenced, but a lot of courts were holding that the residual clause didn't count. Now, Bell did say just that. The Bell court did say that the residual clause is out, but its main holding was on the Missouri statute, which it thought allowed for a conviction to be had without the slightest indication of any kind of force. So, where would we be now, if, you know, where are we now, rather, with this? Well, the main problems I've got are the appeal that was unsuccessful, which was based on Swopes, and as Judge Loken just pointed out, Lockhart v. Flatwell, which says, apparently says, categorically, failure to make an objection, which is based on law, which will later overrule, is not prejudice. Counsel, I have a somewhat simpler question. That is, the district court refused to relieve General McLeod that he wouldn't have, his sentence wouldn't have changed even if Bell hadn't been raised. Isn't that correct? That's correct, Your Honor. So, why is that not, why is this case, it's not meant to be a rhetorical question, but why is this case not affirmable simply on that ground? Well, you know, the district judge saying at his Section 2255 hearing that he would have granted, given the same sentence, that's a very specific amount of months, 216 months. Of all the numbers he picked, he was that one, which coincidentally was the one that everybody, which at least the government pointed to. He didn't say that at the sentencing hearing, though. I made this remark in our reply briefing that the district court never mentioned that he would do that. He only said that after the, you know, after it all came about. Well, just to add to that. No, that's because Bell wasn't brought up at the sentencing hearing. That's the whole, that's the whole, that's the procedural impartiality we had. He had no reason to say that to them. Isn't that correct? Probably, Your Honor. But Judge Fenner had a lot to say about why he gave him the sentence he gave. But one thing he didn't say was, this is the sentence I'm going to give you regardless of what, what we're contending. And that's one point I want to make, is that that's what the parties gave him to think about, was the sentencing, the sentencing range. Was it 78 or 85 to 105, 106 months? Well, to play this out too, Judge Arnold's point, not only he's right that the district judge would have had no, no real reason to say that the first time around, but let's play this out, right? So, we reverse, you want us to reverse, and say that there's ineffective assistance of counsel. And we remand, and the district judge says, well, I already said that I was going to give him the same sentence. And so, I mean, that doesn't work. I mean, we, we, it seems like we're not, we wouldn't be doing anything for your client if we went that direction. We did make a, a request towards the end of our reply briefing to ask the court to consider reassigning it to a different judge on remand. I, I'm aware that there is authority for the court to do that, and. Usually when there's misconduct, or we think that the judge can't, can't judge it in an unbiased way. Right. If I may reserve the remainder of my time for rebuttal, about a minute. Thank you, Your Honor. Mr. Coffey? May it please the court. I wondered initially why the court granted a certificate of appealability in this case. But I, I think it's possible that the court at the time was not aware of the Lockhart versus Fretwell case. And I must admit, I've been doing this since 1973, and I, I went one over my head. But upon closer inspection, when I looked at it, it's like, all right, I think he has a problem here. Now, one of the things I tried to point out. I was the Eighth Circuit dissenter who was upheld in Fretwell. So I. Are very familiar with it, yes. Yes. However, I did. And he was, he was ultimately granted clemency. Oh, interesting. Interesting. By the governor of Arkansas a year, some years later. Interesting. In this case, first of all, we have an extensive upward variance. Which the judge granted because, if you look at the facts of the case, the reason he was charged with these firearm offenses was somebody was murdered. And Judge Fetter conducted a very extensive hearing on the question of whether he was actually responsible for the murder. And therefore, that's the reason he got this rather substantial upward variance. He went up to 216 years, and he was looking at a guideline range of 84 to 105. But what I think is interesting, Judge, not just for the Fretwell case. Because in the Fretwell case, the Supreme Court assumed that we had error. Because in Fretwell, the defense counsel last year forgot or neglected or didn't notice a favorable case for his client. But Fretwell presumed that that was, seemed to presume that that was error. But what's interesting is in Lafler versus Cooper, the court said, wait a minute. They interpreted it as meaning, whoa, we're missing both error and prejudice. Because they said there was no error because you look at it from today's standpoint, not at the time. So according to those two decisions, and I think we point that out, hopefully I point that out in the brief. Because of those two decisions, he doesn't make either prong of the error prejudice requirements in Strickland and Hill. I wondered about that though, because one of the things is, this is kind of a weird deal. Because if, let's say that Swopes came first, okay? And under those circumstances, we would say counsel is not ineffective for failing to predict a change of the law. And then if we were to say no error the other way, counsel is not ineffective or following a binding precedent. So I can't quite figure that out. Basically, if the law changes, the defendant never wins, and that cannot be the rule. Well, but it kind of does seem to be the rule here, because you're right. The cases do say, we don't require counsel to be clairvoyant. There was even a case that Judge Loken wrote in one of my cases, which says we don't require them to scan the advance sheets up until the very last minute, waiting for an opinion to come out. Now, I thought I might have missed something here, but in this case, we had five months. We had five months that they had to figure this out, and nobody did. And in fact, the panel decision in Swopes actually came out two weeks before this case. As the court, I think, is probably aware, the reason we didn't get permission to appeal the Jones was because it was guidelines. And the Solicitor General doesn't like to appeal guidelines cases. Those are supposedly to be decided by the Sentencing Commission. Well, Swopes came along, and I think one of the things which I think undoubtedly would have happened here, by the way, is if this case had come out the other way, we probably would have sought to appeal and because we knew we were going in banks in Swopes. But the other thing I want to point out, and maybe I'm gilding the lily here, but the thing is, is that there was another way to make this a crime of violence, both at the time he committed the crime and both the time of sentencing. The time of sentencing, it was an enumerated felonies clause, and we know from the guidelines, you look at the guideline range at the time of sentencing unless it poses an ex post facto problem. Well, we don't have ex post facto here either because at the time he committed the crime in 2015, it was a residual clause offense. Now, in the Jones case, I think the majority opinion says, well, the residual clause doesn't count because of the second Johnson case. But then Beckles came out before sentencing here, and Beckles says, no, residual clause is good in the context of the guidelines. So, at the time he committed the crime, we had two different ways of making this a crime of violence. At the time he was sentenced, we have two ways of making this a crime of violence. Therefore, the guideline range in this case has always been 84 to 105, it will never change. And what makes this case different, I think, and favorable to us, in the average case where the judge says, I would have imposed the same sentence, is that those are always cases where the court of appeals finds, oh, you miscalculated the guidelines. In this case, the court has said, you calculated the guidelines accurately. And so if this case goes back, and there's a reason for it to, but if it were to go back, not only do we have the same judge based on the same facts, same records, same everything, but he'd be using the same guidelines range that he used to begin with. That has never changed. It's always been 84 to 105. So, yeah, it wouldn't serve any purpose whatsoever. I don't know that I have anything more to say. I've got four minutes left, but unless the court has any questions, I'm prepared to. The thing that is interesting to me in this case is some kind of prejudice to the guilty plea decision. But I'm not sure there's anything to be done about that. Well, yeah. Because it probably is, if he, would it have been the same decision if he had been advised that Bill was going to dictate the sentence? Yeah, and I don't even, first of all, I don't know that that's even, I don't think he's made that argument now, but I don't think he made that argument in the district court. No, but it's a difference from Fretwell. But I think you have to presume, too, that you make a decision based on the fact that the court is going to get the law correct, you know, and not a decision based on, you know, that the court is going to mess it up. I would think the defendant says, yeah, they're getting the law today correct. Yes. So, unless there are any other questions, I would have. He has not moved to withdraw his plea, has he? No, no. There's no motion to withdraw a plea? No, absolutely, Your Honor. He simply wants to be resentenced, as I said. I think the court has already made the point, he'd be resentenced by the same judge using the same evidence, and in this case, the identical guidelines range, it wouldn't be lower. Thank you. So, thank you. Mr. Nacy, for rebuttal. Yes, thank you, Your Honor. You know, if we could turn the clock back and the district court bound by bell still don't see how we can get to the point where it's a windfall to this person. He'll be still doing more than 10 years in prison, but to get to that point, of course, I got to get past his appeal, the court in slopes, and the Supreme Court in Lockhart against Fretwell. I'm remiss for not having discussed Fretwell a little bit more, but I think since the prejudice issue ties in with the failure to object and the sentencing range, the district court said he would consider is the difference. I have nothing further, Your Honors. We thank you for the appointment, and I wish you best. Thank you, counsel. The case has been well briefed and argued. It's certainly unusual. The law faces us with unusual issues all the time and has done so again, and we'll take it under advisement. Thank you, Your Honor.